CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
SEP 13 2019
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DALE W. AKERS, | ) |
| Appellant, | ) Civil Action No. 7:19CV00037 |
| v. | ) **MEMORANDUM OPINION** |
| CHRISTOPHER MICALE, et al., | ) By: Hon. Glen E. Conrad |
| | ) Senior United States District Judge |
| Appellees. | ) |

In this appeal from the United States Bankruptcy Court for the Western District of Virginia, Dale W. Akers seeks review of the bankruptcy court's memorandum opinion and order denying confirmation of the appellant's fourth amended plan, denying leave to further amend the plan, and dismissing his Chapter 12 bankruptcy petition. For the following reasons, the court will affirm the decision of the bankruptcy court in full.

## Background

Akers has been farming on a full-time basis since 1982. His farming operations in Carroll County, Virginia include a produce farm and a general partnership through which he and his son Ryan Akers ("Ryan") buy and sell cattle. Akers has partly financed his farming operations through loans from the United States Department of Agriculture's Farm Service Agency ("FSA"), Skyline National Bank ("Skyline"), and Farm Credit of the Virginias, A.C.A ("Farm Credit").

After experiencing financial difficulties stemming from a son's medical expenses, Akers sought the protection of the Bankruptcy Code. He filed a voluntary petition under Chapter 12 on

May 3, 2017.[1] On July 31, 2017, Akers filed his first Chapter 12 plan, to which Skyline, Farm Credit, and the Chapter 12 trustee all objected.[2] By order entered September 28, 2017, the bankruptcy court denied confirmation of the first plan and gave Akers fourteen days to file an amended plan, provide tax returns to the objecting creditors, and file monthly operating reports.

On October 14, 2017, Akers filed his first amended plan, which was set for confirmation on November 15, 2017. The record reveals that the debtor, the Chapter 12 trustee, and the objecting parties agreed that further amendment was necessary. Consequently, Akers filed a second amended plan on January 16, 2018.

On May 16, 2018, the bankruptcy court held a hearing on the second amended plan and the pending objections by Farm Credit, Skyline, and the Chapter 12 trustee. During the hearing, the bankruptcy court learned for the first time that Akers owed Carroll County approximately $40,000.00 in delinquent real estate taxes. However, Carroll County had not been identified as a creditor, and Akers' second amended plan included no provision for payment of the tax claim. The record indicates that Akers was also unable to provide an accurate estimate of his monthly income from the cattle business that he operates with Ryan or the number of cattle that they own, and that Akers had been borrowing money from Ryan to fund farming operations. Consequently, on May 24, 2018, the bankruptcy court denied confirmation of the second amended plan and gave Akers thirty days to file a third amended plan. Akers was also ordered to amend his schedules to include Carroll County as a creditor, and to not incur any additional debt without prior court approval.

---

[1] Chapter 12 of the Bankruptcy Code was enacted in 1986 "to allow farm debtors with regular annual income to adjust their debts." Hall v. United States, 566 U.S. 506, 509 (2012); see also 11 U.S.C. § 109(f) ("Only a family farmer or family fisherman with regular annual income may be a debtor under chapter 12 of this title."). Chapter 12 was modeled after Chapter 13 of the Bankruptcy Code, which permits individual debtors with annual income to preserve assets subject to a court-approved plan for payment of their debts. Id.

[2] In addition to objecting to confirmation, the Chapter 12 trustee moved to dismiss the case under 11 U.S.C. § 1208.

On June 15, 2018, Akers filed a third amended plan. Prior to the confirmation hearing on July 25, 2018, the debtor and his attorney prepared new financial projections. During the confirmation hearing, the bankruptcy court discovered that the wrong set of projections had been filed. Although the debtor's actual expenses were in some instances substantially less than his projections, the discrepancies further eroded the bankruptcy court's confidence in the debtor's ability to accurately project, track, and report his finances. Additionally, the record indicates that the debtor remained uncertain as to how much he owed in past due real estate taxes. Accordingly, on August 2, 2018, the bankruptcy court denied confirmation of the third amended plan and gave Akers twenty-one days to file a fourth amended plan.

The bankruptcy court's August 2, 2018 order also imposed other requirements. In addition to filing itemized monthly operating reports, Akers was required to make certain payments to Skyline and the Chapter 12 Trustee on or before September 30, 2018. The record indicates that those payments, and others ordered by the bankruptcy court, were made by the debtor.

On August 14, 2018, Akers filed a fourth amended plan. A hearing on the fourth amended plan was set for October 17, 2018. Skyline and Farm Credit filed objections to the fourth amended plan, and the Chapter 12 trustee's original objections and request for dismissal were carried over from the prior hearings. During the October 17, 2018 hearing, it became apparent that the debtor's operating report for August 2018 contained erroneous calculations. The report also included a new $3,206.53 loan from Ryan as part of the debtor's income, even though the bankruptcy court had previously prohibited the debtor from incurring additional debt without the bankruptcy court's permission. Additionally, the debtor's actual revenue from produce sales in August and September 2018 was significantly less than the projected figures.

During the October 17, 2018 confirmation hearing, confusion arose regarding the claims of Farm Credit. Part of the issue was that Farm Credit was granted leave to foreclose on real property owned by the debtor's limited liability company, and the foreclosure sales did not close until around the time of the hearing. At the hearing, Farm Credit advised the bankruptcy court that it would need time to determine the remaining deficiency and file an amended claim reflecting the unsecured balance. Akers' fourth amended plan did not account for any potential unsecured claim on the part of Farm Credit, and the debtor did not make any inquiry of Farm Credit prior to the hearing to determine the outcome of the foreclosure sales.

The bankruptcy court ultimately took confirmation under advisement, directed Farm Credit to file amended claims reflecting the remaining deficiency, and permitted the parties to file briefs in support of their respective positions on the debtor's fourth amended plan. On November 27, 2018, Akers filed a fifth amended plan without being granted leave to do so. The bankruptcy court construed the filing as a request for leave to amend.

On January 3, 2019, the bankruptcy court issued an opinion and order denying confirmation of the fourth amended plan. The bankruptcy court found that Akers had not established that he could afford the payments proposed in the plan, and that his "records and projected revenue and expenses [were] inaccurate and unpersuasive such that they [did] not demonstrate the Debtor's probable compliance with the plan terms." Jan. 3, 2019 Mem. Op. 16, 20, Dkt. No. 1-2. Accordingly, the bankruptcy court concluded that Akers "failed to carry his burden on the feasibility prong" of 11 U.S.C. § 1225, and that confirmation of the fourth amended plan must therefore be denied. The bankruptcy court also denied the debtor's request for leave to file a fifth amended plan and dismissed the case.

4

Akers timely appealed the bankruptcy court's decision. The matter has been fully briefed and is now ripe for review.[3]

## Standard of Review

The court has appellate jurisdiction over this matter pursuant to 28 U.S.C. § 158(a). The court reviews the bankruptcy court's findings of fact for clear error. Gold v. First Tenn. Bank Nat'l Ass'n, 743 F.3d 423, 429 (4th Cir. 2014). The bankruptcy court's conclusions of law, on the other hand, are reviewed de novo. Id. If an issue presents a mixed question of law and fact, the court applies the clearly erroneous standard to the factual portion of the inquiry and the de novo standard to the legal conclusions derived from those facts. Gilbane Bldg. Co. v. Fed. Reserve Bank, 80 F.3d 895, 905 (4th Cir. 1996). Finally, "decisions made in the exercise of a bankruptcy court's discretion will not be set aside unless there is plain error or an abuse of discretion." United States v. Suthers, 173 B.R. 570, 572 (W.D. Va. 1994) (citations and internal quotation marks omitted).

## Discussion

Akers appeals several portions of the bankruptcy court's January 3, 2019 decision. For the reasons outlined below, the court will affirm the bankruptcy court's decision in its entirety.

### I. Denial of Plan Confirmation

Akers initially appears to challenge the bankruptcy court's decision to deny confirmation of the fourth amended plan. Akers argues that the bankruptcy court failed to give him the benefit of the doubt, and did not properly credit the fact that he made all of the required Chapter 12 payments or the fact that two hurricanes affected his crop production. For the following reasons, the court is unpersuaded.

---

[3] The court has determined that oral argument would not aid the decisional process.

The bankruptcy court refused to confirm the debtor's fourth amended plan because the court found that the plan was not feasible. When deciding whether to confirm a proposed Chapter 12 plan, a bankruptcy court must consider whether "the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1225(a)(6). This is commonly referred to as the feasibility requirement. Feasibility is "fundamentally a fact question." In re Rape, 104 B.R. 741, 748 (W.D.N.C. 1989) (citation and internal quotation marks omitted). "To find that a plan is feasible, the court must be persuaded that it is probable, not merely possible or hopeful, that the Debtor[] can actually pay the restructured debt and perform all obligations of the plan." Keith's Tree Farms v. Grayson Nat'l Bank, 535 B.R. 647, 652 (W.D. Va. 2015) (Conrad, J.) (citations and internal quotation marks omitted); see also In re Ames, 973 F.2d 849, 851 (10th Cir. 1992) ("Although debtors are not required to guarantee the success of the plan, they must provide reasonable assurance that the plan can be effectuated. A [Chapter 12] plan's income projections must be based on concrete evidence and must not be speculative or conjectural.") (citations and internal quotation marks omitted).

Courts have recognized that "[f]easibility is never certain, particularly in farm situations." In re Rape, 104 B.R. at 748 (citation and internal quotation marks omitted). Consequently, courts often "give the Chapter 12 debtor the benefit of the doubt regarding the issue of feasibility when the debtor's plan projections use reasonable data in light of the current economic climate." Keith's Tree Farms, 535 B.R. at 652 (citation and internal quotation marks omitted). Courts have also made clear, however, that "[s]incerity, honesty, and willingness are not sufficient to make the plan feasible, and neither are any visionary promises." In re Rape, 104 B.R. at 749 (citation and internal quotation marks omitted). Instead, the court must "carefully scrutinize the proposed payments in light of the projected income and expenses and consider whether they are

6

based upon realistic and objective facts and whether they are capable of being met." In re Szudera, 269 B.R. 837, 842 (Bankr. D.N.D. 2011).

In this case, the bankruptcy court considered the cash flow projections submitted by the debtor, as well as the documents depicting his actual revenue and expenses for 2018 through the month of October. The bankruptcy court noted that the debtor's total revenue and expenses for the first ten months of 2018, when combined with the projected revenue and expenses for November and December, left just $44,548.51 to make payments to the trustee and creditors pursuant to the fourth amended plan. Jan. 3, 2019 Mem. Op. 13. Since the plan would have required the debtor to make minimum annual payments of nearly $58,000.00, the bankruptcy court found that the debtor was "not even close" to being able to perform his obligations under the plan. Id. The bankruptcy court also noted that the fourth amended plan included no means or methods for reimbursing Ryan for the funds advanced to the debtor in 2018, and that the debtor had not ruled out the possibility of needing to borrow additional funds from Ryan during the life of the plan.

On appeal, Akers points out that he consistently made required payments during the pendency of the bankruptcy proceedings. While such evidence may be relevant to the feasibility analysis, it is "certainly not conclusive." Keith's Tree Farms, 535 B.R. at 653. Thus, the fact that Akers complied with the bankruptcy court's order of payments did not automatically warrant confirmation of the fourth amended plan. After considering the totality of the evidence, including the debtor's history of providing unreliable and inaccurate projections, the bankruptcy court found that the evidence of prior payments was simply insufficient to prove that the fourth amended plan was feasible. See Jan. 3, 2019 Mem. Op. 17 ("[T]hat the Debtor has remained current on his obligations to date does not necessarily prove his ability to make future payments

or to make balloon payments in seven years, either through refinancing or accumulation of funds."). The bankruptcy court's finding in this regard was not clearly erroneous.

Akers also argues that the bankruptcy court erred by failing to give him the benefit of the doubt, particularly in light of the fact that weather negatively impacted his profits in 2018. As indicated above, "[c]ourts sometimes give family farm debtors the benefit of the doubt on the issue of feasibility," since farming can be an uncertain venture. In re Wise, No. 3:12-bk-7535, 2013 Bankr. LEXIS 2299, at *10 (Bankr. D.S.C. June 3, 2013). However, "that does not give the bankruptcy court license to ignore the hard numbers altogether." Keith's Tree Farms, 535 B.R. at 653. Here, the bankruptcy court reviewed the debtor's 2017 operating reports and noted that his 2018 revenue did not fall far below the prior year's earnings, thus indicating that the original 2018 projections were overly optimistic. The bankruptcy court ultimately determined that "in all but the most optimistic scenarios," Akers would not have income sufficient to make all of the payments required under the fourth amended plan. Jan. 3, 2019 Mem. Op. 15. The bankruptcy court further emphasized that the calculations assumed the accuracy of the debtor's recordkeeping and projections, which had proven to be inaccurate on numerous occasions. The bankruptcy court found that the previously identified errors cast doubt on the entirety of the debtor's recordkeeping, and that other deficiencies, including the failure to account for repayment of the loans from Ryan or Farm Credit's deficiency claim, "further plague[d]" the debtor's case. Id. at 16. Ultimately, the bankruptcy court concluded that the debtor's fourth amended plan failed to meet the feasibility requirement of § 1225(a)(6):

> The Debtor's uncompelling testimony and mistake-laden projections and operating reports do not persuade the Court that the Debtor can comply with the Fourth Amended Plan. The Debtor has had five opportunities to propose a confirmable plan. At three consecutive evidentiary hearings, the Debtor's financial projections were deficient. Although the Debtor's evidence

8

> improved in some instances over time, it remains insufficient to meet the burden imposed by Section 1225.

Id. at 17. Upon review of the record, the court is convinced that this decision was not clearly erroneous.

## II. Denial of Leave to Amend

Akers also challenges the bankruptcy court's decision to deny him leave to further amend his plan. Akers argues that he was entitled to file a new plan as a matter of right. For the following reasons, the court is unpersuaded.

"The purpose of a Chapter 12 bankruptcy filing is to give family farmers a chance to reorganize their debts and keep their farms while preserving the fair treatment of creditors by moving Chapter 12 bankruptcy cases forward in an expeditious manner." In re Valentine Hill Farm LLC, 580 B.R. 815, 820 (Bankr. S.D. Ind. 2018) (citing In re Pertuset, 492 B.R. 232, 259 (Bankr. S.D. Ohio 2012)). A Chapter 12 debtor is required to file a plan no later than 90 days after the petition is filed, unless the bankruptcy court extends the 90-day period based on circumstances for which the debtor should not justly be held accountable. 11 U.S.C. § 1221. "After expedited notice," the bankruptcy court is required to hold a hearing on confirmation of the plan. 11 U.S.C. § 1124. "Except for cause," the hearing must be concluded no later than 45 days after the filing of the plan. Id. "These accelerated time periods reflect the expedited nature of chapter 12 cases." In re Pertuset, No. 12-8014, 2012 Bankr. LEXIS 5792, at *31 (B.A.P. 6th Cir. Dec. 18, 2012); see also In re Coleman, No. 2:19-cv-10093, 2019 U.S. Bankr. LEXIS 2326, at *4 (Bankr. M.D.N.C. June 21, 2019) ("The provisions and language used in chapter 12 reflect Congress's intent that chapter 12 be an expedited process.").

The Bankruptcy Code allows a debtor to modify a plan "at any time before confirmation." 11 U.S.C. § 1223(a). However, if confirmation is denied, a debtor must obtain

leave to file a new or modified plan outside the 90-day period set forth in § 1221. See Keith's Tree Farms, 535 B.R. at 653–54 (finding no abuse of discretion in the bankruptcy court's decision to deny leave to amend after the debtor had already filed four unsuccessful Chapter 12 plans). This conclusion is supported by § 1208(c)(5) of the Bankruptcy Code, which authorizes the bankruptcy court to dismiss a case if it denies confirmation and also denies a request for extension of time to file a new or amended plan. 11 U.S.C. § 1208(c)(5) (permitting dismissal for cause, including "denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan"). It is also supported by decisions from other circuits, which have discussed the factors to be considered "[i]n determining whether to allow the filing of an amended plan" under Chapter 12, "and if allowed, how long an extension to grant." Novak v. DeRosa, 934 F.2d 401, 404 (2d Cir. 1991) (citing the factors set forth in In re Bentson, 74 Bankr. 56, 58 (Bankr. D. Minn. 1987)); see also In re Luchenbill, 112 B.R. 204, 219 (Bankr. E.D. Mich. 1990) (denying leave to file a new or amended plan and noting that "[e]xtensions of time to file new Chapter 12 plans after the earlier has been denied confirmation are permissible but disfavored").

In arguing that he had an absolute right to file a fifth amended plan, Akers relies on 11 U.S.C. § 1223, which, as indicated above, allows a debtor to modify a plan prior to confirmation. The court agrees with the trustee that this provision does not give a debtor an absolute and unlimited right to amend a Chapter 12 plan after confirmation is denied. However, even if the text of § 1223, when read in isolation, could be construed to support Akers' position, the context and history of Chapter 12 further buttress the conclusion that leave to amend was required under the circumstances presented in this case. See Lynch v. Jackson, 853 F.3d 116, 121 (4th Cir. 2017) ("[L]anguage is not read in isolation, rather '[i]t is a fundamental canon of

statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'") (quoting Davis v. Mich. Dep't of Treasury, 489 U.S. 803, 809 (1989)). To hold otherwise would render meaningless § 1208(c)(5), which expressly provides for dismissal of a Chapter 12 case upon "denial of confirmation of a plan . . . and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1208(c)(5). If Congress had intended to grant an absolute and unfettered right to file additional or modified plans upon denial of confirmation, it would not have included this provision in Chapter 12.

The court's conclusion is further supported by the context surrounding the enactment of Chapter 12. Although Chapter 12 was designed "to allow family farmers a fighting chance to reorganize their debts," it "was also structured to require debtors to speedily confirm a plan of reorganization." In re Bentson, 74 B.R. at 58. As other courts have observed, "[t]he legislative history suggests that Congress intended that Chapter 12 bankruptcy cases were to move along expeditiously to protect creditor's interests and to preclude diminution in the value of collateral if a reorganization cannot be achieved." Haffey v. Crocker, 576 B.R. 540, 550 (B.A.P. 6th Cir. 2017) (citation omitted); see also In re Pretzer, 96 B.R. 790, 793 (Bankr. N.D. Ohio 1989) (referencing the legislative history explaining that certain provisions, including the 90-day time limit for filing a Chapter 12 plan, were included "to get these cases moving, rather than languishing in the courts") (citation omitted). Under Akers' interpretation of § 1223, a debtor would be allowed to perpetually modify a plan that was previously found to be non-confirmable. The court agrees with the trustee that such interpretation is unsupported by the legislative history of Chapter 12, which reflects "Congressional intent that chapter 12 cases are to proceed swiftly

to confirmation or dismissal." In re Tou Houa Thao, No. 3:06-bk-30019, 2006 Bankr. LEXIS 4057, at *2 (Bankr. W.D. Mo. Oct. 19, 2006).

For all of these reasons, the court concludes that Akers was not entitled to amend his Chapter 12 plan again as a matter of right. Instead, he was required to obtain leave to file a fifth amended plan. Consequently, "[t]he bankruptcy court's denial of leave to amend is reviewed for abuse of discretion only." Keith's Tree Farms, 535 B.R. at 653.

In determining whether to allow the filing of an amended plan, courts consider such factors as when the first Chapter 12 plan was filed, how comprehensive and complete the first plan was, the reasons for denial of confirmation of the first plan, and the likelihood of successful confirmation of a new or amended plan. Novak, 934 F.2d at 404. The bankruptcy court referenced these factors in its decision and ultimately found that they weighed against further amendment. The bankruptcy court emphasized that Akers' Chapter 12 case had been pending for over a year and a half, and that he had not yet proposed a confirmable plan. The bankruptcy court found that successful confirmation of the fifth amended plan appeared to be unlikely, in light of the court's concerns regarding the credibility of the debtor's financial projections. Although the fifth amended plan attempted to resolve Farm Credit's deficiency claim by adding another balloon payment, the bankruptcy court determined that such amendment would be fruitless, since Akers had not established that he could afford the payments that were already proposed in the fourth amended plan. The bankruptcy court emphasized that Akers had repeatedly provided inaccurate and unreliable projections and that the fifth amended plan did "nothing to persuade the court otherwise." Jan. 3, 2019 Mem. Op. 20.

As this court previously observed in Keith's Tree Farms, "'[b]ankruptcy courts are given a great deal of discretion to say when enough is enough' when it comes to granting or denying

the opportunity to amend reorganization plans." 535 B.R. at 654 (quoting Matter of Woodbrook Assocs., 19 F.3d 312, 322 (7th Cir. 1994)). Upon review of the record and applicable caselaw, the court finds no abuse of discretion in the bankruptcy court's decision to deny leave to amend in this case.

### III. Dismissal of the Petition

Finally, Akers argues that the bankruptcy court erred in dismissing his Chapter 12 petition. The court is once again constrained to disagree.

Pursuant to 11 U.S.C. § 1208(c), the bankruptcy court may dismiss a Chapter 12 case "for cause" when a party in interest requests dismissal. Grounds for dismissal under this provision include, but are not limited to, "unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors" and "denial of confirmation of a plan under [Chapter 12] and denial of a request made for additional time for filing another plan or a modification of a plan." 11 U.S.C. § 1208(c). Courts have also held that "dismissal of a Chapter 12 case is appropriate when debtors have failed to propose a confirmable plan." In re Ames, 973 F.2d at 851. Ultimately, "[t]he decision to dismiss a Chapter 12 petition is within the sound discretion of the bankruptcy court." Keith's Tree Farms, 535 B.R. at 654.

In this case, the bankruptcy court determined that there was cause for dismissal "despite the Debtor having made payments to date when put on terms by the Court." Jan. 3, 2019 Mem. Op. 19. In particular, the bankruptcy court found that the case was "fraught with 'unreasonable delay, or gross mismanagement, by the debtor that [was] prejudicial to creditors.'" Id. (quoting 11 U.S.C. § 1208(c)(1). The bankruptcy court noted that unreasonable delays can result from the failure to file a confirmable plan, and that gross mismanagement can be demonstrated by failure to provide accurate financial information. Id. (citing In re Keith's Tree Farms, Inc., 519 B.R.

13

628, 643 (Bankr. W.D. Va. 2014). Because Akers received "multiple opportunities to present a confirmable plan and [was] unable to do so," the bankruptcy court dismissed the case. Upon review of the record, the court finds no abuse of discretion.

## Conclusion

For the reasons stated, the court will affirm the bankruptcy court's decision in full. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 13th day of September, 2019.

／s／ Jon Conrad
Senior United States District Judge